UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARTHUR LUNA,

              Plaintiff,              Case No. 06-15031

vs.                                     HONORABLE CHIEF JULIAN ABELE COOK
                                            HONORABLE STEVEN D. PEPE

MICHAEL J. ASTRUE,
Commissioner of Social Security,

              Defendant.
=========================/

## Report and Recommendation

**I.**    **Background**

Arthur Luna brought this action under 42 U.S.C. § 405(g) for judicial review of the Commissioner's final decision denying his application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Both parties have filed motions for summary judgment, which have been referred pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) to the undersigned. For the following reasons, it is **RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED** and Defendant's Motion for Summary Judgment be **GRANTED**.

    **A.**    **Procedural History**

Plaintiff filed an application for DIB on April 27, 2002, alleging disability due to fibromyalgia and problems with his hands, back and shoulders, claiming that he became disabled on December 31, 1999 (R. 57-59, 74). Plaintiff had also applied for DIB on August 8, 2001, which was denied on November 26, 2001, and Plaintiff did not seek review (R. 18). Plaintiff

1

seeks to reopen that denial.[1]  Plaintiff's claim was initially denied on January 8, 2003 (R. 43-46).

On August 19, 2004, Plaintiff appeared with counsel and testified at a hearing before

Administrative Law Judge ("ALJ") Regina Sobrino (R. 346-73).  On January 10, 2005, ALJ

Sobrino issued a decision in which she reopened Plaintiff's August 2001 application.  ALJ found

that Plaintiff was not disabled under the Act (R. 18-23). On October 20, 2006, the Appeals

Council affirmed the ALJ's decision (R. 5-7).

   B.   **Background Facts**

      1.   **Plaintiff Testimony**

         *Disability Application*

   Plaintiff was 47 years old on December 31, 2003, when his insured status for DIB

expired (R. 21, 57).  Plaintiff completed the eleventh grade, and prior to the onset

of his alleged disability, had worked as an assembler, cleaner and driver (R. 80, 83).  At his

October 19, 2004, hearing, Plaintiff testified that he had not worked since December

31, 1999.  He could not work because of problems associated with fibromyalgia, pain, poor

sleep, medication side effects, muscle pain and fatigue (R. 351).

   Plaintiff estimated that he could stand and sit for about twenty minutes, and walk for

fifteen to twenty minutes (R. 352).  Plaintiff does not use a cane or walker.  He estimated that he

could lift about ten pounds.  Plaintiff experiences numbness secondary to carpal tunnel

syndrome bilaterally, and that condition makes it difficult for him to write (R. 353).

   His wife cooks, cleans, shops and does laundry.  He cuts the lawn, using a self-propelled

mower (R. 354-55).  Plaintiff has no trouble bathing or dressing himself (R. 356).  He drives, and

---

[1] An earlier December 15, 1995, application was denied initially with no request for reconsideration (R. 30).  A December 11, 1997, application for DIB was denied by ALJ William Musseman on December 27, 1999 (R. 30-39).

visits his mother who lives locally (R. 355). Two years ago he and his wife traveled with their son when he moved to Georgia (R. 356-57). Plaintiff was the passenger, and did not drive. While they were in Georgia, they took a four-day cruise to the Bahamas and Puerto Rico (R. 360-61).

Plaintiff used to play and coach sports, but he gave up such activities on account of the pain he experienced (R. 356). Plaintiff last coached a high school team in 1999.

2. **Medical Evidence**

**A. Medical Evidence Before ALJ Musseman's December 27, 1999, Denial of Benefits.**

On February 18, 1997, Gary Redmond, P.T., examined Plaintiff and recommended that Plaintiff be discharged from physical therapy (R. 278, 281). Plaintiff had 27 physical therapy visits between February 2, 1997, and April 17, 1997, which resulted in achieving a 50% decrease in pain. A return to normal functioning was partially achieved.

In June 1997, Plaintiff reported that he had been experiencing shoulder pain, and James Lum, D.O. provided treatment including physical therapy, epidural injections, and massage (R. 32).

ALJ Musseman's decision of December 27, 1999, notes that on March 8, 1998, Richard Kovan, M.D., noted that Plaintiff who had injured his left shoulder while working for General Motors (R. 33).[2] Plaintiff reported that he had undergone bilateral carpal tunnel surgery in 1982 and left knee surgery in 1990 (R. 33). Plaintiff exhibited a full active range of motion of the cervical spine, including forward flexion, extension, as well as lateral rotation and bending. Pin-prick tests showed normal sensation capability of the upper and lower extremities. Further

---

[2] Certain undisputed facts, including, Dr. Kovan's report are not in the current record, but rather were taken from ALJ Musseman's December 29, 1999, decision.

examination revealed no gross muscle atrophy/deformity, joint erythema, edema or effusion. Plaintiff had a normal gait without an assistive device. Dr. Kovan found no evidence of neurological or orthopedic impairment.

On July 6, 1998, Carol A. Beals, M.D., determined that Plaintiff's neck motion to the left was decreased and painful. The chest was clear to auscultation and heart sounds were normal. The chest wall was tender with tight paracervical muscles. The trapezius, rhomboids, and upper deltoid muscles, on the left side, were tight and painful to the touch. Movement of the shoulders, elbows, wrists and hands were full. Dr. Beals identified tender points in the lower cervical area, trapezius supraspinatus, gluteal area, greater trochanter and knees. There was neither vasculitis nor subcutaneous nodules of the extremities. Dr. Beal found no evidence of joint swelling, and the stated that Plaintiff has fibromyalgia, and myofascial pain syndrome involving the upper back and neck area. Dr. Beal also noted the need to rule out the possibility of inflammatory arthritis given the effusion of the knees.

A July 14, 1998, letter by Clark Headrick, D.O., stated that Plaintiff's sleep study showed mild obstructive sleep apnea with upper airway syndrome, and recommended that Plaintiff participate in a continuous positive air pressure program ("CPAP"). On August 18, 1998, Dr. Headrick performed CPAP titration determining that Plaintiff suffered from severe obstructive sleep apnea (R. 286). On September 1, 1998, Gregory Streff, D.O., recommended that Plaintiff's CPAP machine be run at 15 instead of 11 centimeters (R. 285).

A magnetic resonance image ("MRI") of Plaintiff's cervical spine, taken on September 26, 1998, revealed a small central disc herniation at the C3-C4 level without evidence of focal spinal stenosis or deformity of cord compression (R. 34). On September 29, 1998, a total body

nuclear bone scan demonstrated an abnormal uptake in the distal left tibia. On October 4, 1998, an MRI revealed mild thoracic spondylosis.

On October 12, 1998, Dr. Streff switched Plaintiff from a CPAP to a BIPAP breathing machine (R. 284). On November 30, 1998, Dr. Streff met with Plaintiff regarding Plaintiff's problems tolerating the current BIPAP settings (R. 283).

On September 22, 1999, Plaintiff underwent an initial evaluation at the Pain and Rehabilitation Medical Center, P.C., where Jacquelyn G. Lockhart, M.D., thoroughly examined Plaintiff's head and neck, skin, extremities, musculoskeletal structure, motor skills, sensory examination, muscle stretch reflex, gait and station, and impression (R. 155-60). Dr. Lockhart reported that Plaintiff had an impairment in his ability to compete in the field of common labor (R. 159). It was recommended the Plaintiff continue taking nutritional supplements, use non-steroidal anti-inflammatory medication, and undertake an exercise program.

**B. Medical Evidence Subsequent to December 1999 Decision.**

A June 6, 2000, X-ray of the right shoulder revealed normal osseous and articular structures throughout (R. 147). A February 6, 2001, exercise test revealed a below average exercise tolerance (R. 142). In May 2001, Plaintiff, at a doctor's order, hit some golf balls, but stopped doing so due to pain (R. 360).

On June 13, 2001, Charles Veenhuis, D.O. examined Plaintiff's right knee and found no evidence of recent or ancient fracture with normal osseous and articular structures throughout (R. 141).

On December 9, 2002, Paul LaClair, M.D., examined Plaintiff for a Social Security Administration Disability Determination Evaluation (R. 194-95). Dr. LaClair opined that Plaintiff has a diagnosis of exclusion, but there are no "objective physical exam findings or

5

laboratory markers that can be used to support it." Dr. LaClair stated that Plaintiff while suffering from a mild loss of range of motion of the left shoulder, "is able to perform self-cares independently. . . and does not require the use of a walking aid or assistive device."

On May 7, 2003, Plaintiff visited the Genesys Regional Medical Center complaining of muscle pain that prevented him from walking (R. 241).[3]

On October 26, 2004, Dr. Rittinger noted that Plaintiff's use Ativan and diazepam can increase muscle relaxation and make sleep apnea worse (R. 287). Plaintiff's use of Vicodin can also increase the likelihood of sleep apnea.

On January 9, 2005, Plaintiff was treated at Genesys Medical Center for chest pain described as a dull ache (R. 300-334). Plaintiff was assessed with (1) ACS and (2) tracheobronchitis (R. 304). The plan of treatment included: (1) restarting home medications, (2) using the ACS protocol, and (3) IV antibiotics for tracheobronchitis.

### 4. **Vocational Evidence**

Vocational Expert ("VE") Ann Tremblay testified that Plaintiff's past work as an assembler, cleaner and driver was light unskilled work (R. 365). ALJ Sobrino asked VE Tremblay to consider a hypothetical person of Plaintiff's age, education, and work experience who could lift and carry ten pounds frequently and push and pull that weight occasionally (R. 368). The hypothetical individual could stand or walk for no more than two hours, and sit for up to eight hours, during the workday, but needed the opportunity to alternate between sitting and standing. This hypothetical person could not climb ladders, ropes, or scaffolds, could only occasionally stoop or crouch, and he could not forcefully grip, grasp, pinch, twist, or squeeze. He could not perform tasks that required reaching above shoulder level, could not be exposed to

---

[3]The medical record notes that Plaintiff's method of arrival was "ambulated without assistance."

6

hazards or to vibration; and he could not operate air or torque tools. Finally, the individual would be limited to performing simple, routine work. VE Tremblay testified that such an individual could perform work in the sedentary unskilled category. Such jobs include: security monitor (of which there were approximately 2,100 positions existing in the State of Michigan), as well as 5,000 order checker clerk, and 1,500 sorter positions (R. 368-69).

Plaintiff's attorney asked VE Tremblay "if an individual were to be off task up to or at least 25 percent of the working day. . . would that preclude competitive employment?" (R. 369). VE Tremblay responded that it would. Plaintiff's attorney then asked VE Tremblay, "what are the maximum number of absences allowed per month in order to maintain competitive employment" (R. 370)? VE Tremblay responded that one day per month would be the maximum. Plaintiff's attorney then asked VE Tremblay, "If an individual needed to nap 20 to 40 minutes during the working day up to two times, and not during normal breaks, would that preclude work?" VE Tremblay stated that "it would."

### 4. **ALJ Sobrino's Decision**

In a decision dated January 10, 2005, ALJ Sobrino found that Plaintiff met the disability insured status requirements of the Social Security Act through December 31, 2003 (R. 21). The ALJ found that Plaintiff had not engaged in substantial gainful activity from December 28, 1999, through December 31, 2003 (R. 22).

ALJ Sobrino found that objective medical evidence demonstrated that Plaintiff had severe fibromyalgia, degenerative disc disease, carpal tunnel syndrome and sleep apnea during the period in question. She determined that the medical evidence documents impairments that could be expected to produce pain even though allegations of disability symptoms were not fully substantiated by the objective medical or other evidence.

7

ALJ Sobrino determined that Plaintiff had the residual functional capacity ("RFC") sufficient to lift, carry, push, and pull ten pounds; was able to stand/walk for two hours and to sit up to eight hours in an eight-hour workday, but required an opportunity to alternate these positions at will. Plaintiff could occasionally climb, stoop and crouch, but could not climb ladders, ropes or scaffolds. He could not engage in forceful gripping, grasping, pinching, twisting or squeezing with either hand, but he could frequently handle, finger and feel. Plaintiff could not perform work that required reaching above the shoulder level or using air or torque tools, and needed to avoid exposure to hazards and vibration. Plaintiff was limited to simple, routine work.

ALJ Sobrino found that, while Plaintiff could not perform his past work, but he could perform a significant number of jobs in the economy (R. 22). These included the security monitor, order clerk and sorter jobs identified by VE Tremblay. Plaintiff was therefore not under a disability, as defined in the Social Security Act, at any time through December 31, 2003 (R. 22). Further, based upon the reopened Title II application filed on August 8, 2001, claimant is not entitled to a Period of Disability or any Disability Insurance Benefits under Section 216(I) or 223 of the Social Security Act (R. 23).

## II. Analysis

### A. Standards of Review

In adopting federal court review of Social Security administrative decisions, Congress limited the scope of review to a determination of whether the Commissioner's decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Sherrill v. Sec'y of Health and Human Servs.*, 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence has been defined as "[m]ore than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.  *Mullen v. Brown*, 800 F.2d 535, 545 (6th Cir. 1986) (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

### B. Factual Analysis

In his motion for summary judgment, Plaintiff argued that ALJ Sobrino erred as a matter of law in assessing Mr. Luna's credibility and by failing to properly evaluate the medical records and evidence ALJ Sobrino formed an inaccurate hypothetical that did not accurately portray Plaintiff's impairments (Dkt. # 8, p. 6).

#### 1. *Plaintiff's Credibility*

Subjective evidence is only considered to "the extent…[it] can reasonably be accepted as consistent with the objective medical evidence and other evidence" (20 C.F.R. 404.1529(a)). The ALJ is not required to accept a claimant's own testimony regarding allegations of disabling pain when such testimony is not supported by the record.  *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987).  The issue of a claimant's credibility regarding subjective complaints is within the scope of the ALJ's fact finding discretion.  *Kirk v. Secretary of health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981); *Jones v. Commissioner of Social Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).

In order for an ALJ to properly discredit a claimant's subjective testimony, the credibility determination must be accompanied by a detailed statement explaining the ALJ's reasons. S.S.R. 96-7p directs that findings on credibility cannot be general and conclusory findings, but rather they must be specific.  The ALJ must say more than the testimony is not credible.  *Felisky*

*v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994), made it clear that the ALJ cannot merely recount the medical evidence and claimant's daily activities and then without analysis summarily conclude that the overall evidence does not contain the requisite clinical, diagnostic or laboratory findings to substantiate the claimant's testimony regarding pain. *Id*. at 1039.

In the present case, ALJ Sobrino could have been more thorough in explaining her reasons for discounting Plaintiff's credibility and statements. Yet, ALJ Sobrino had sufficient evidence to discredit Plaintiff's subjective testimony. A medical consultant who reviewed Plaintiff's record, in December 2002, concluded that Plaintiff had the residual functional capacity for light work (R. 20). ALJ Sobrino noted that while this 2002 determination did not have the benefit of subsequent examinations and additions to the record. ALJ Sobrino found Plaintiff's capacity was a limited range of sedentary work. She found that since December 28, 1999, to December 31, 2003, Plaintiff possessed the residual functional capability to lift, carry, push and pull ten pounds; he was able to stand/walk for two hours in an eight-hour workday and to sit up to eight hours in an eight-hour workday, but he required an opportunity to alternate these positions at will. Plaintiff could occasionally climb, stoop, and crouch, but could not climb ladders, ropes or scaffolds. Plaintiff could not engage in forceful gripping, grasping, pinching, twisting or squeezing with either hand, but could frequently handle, finger and feel. Plaintiff could not perform work that required reaching above the shoulder level or using air or torque tools, and he needed to avoid exposure to hazards and vibration. Due to effects of sleep apnea and medication, Plaintiff was limited to performing simple, routine work. Yet the December 2002 medical evaluation that Plaintiff could perform "light work" supports ALJ Sobrino's more restricted finding.

It is significant that Plaintiff's medical record for the last several years adds little to the understanding about the conditions highlighted in Plaintiff's previous hearing. In fact, the most significant medical event recorded in the past several years, was a trip to the emergency room for chest tightness which was attributed, in part, to tracheobronchitis. ALJ Sobrino notes that the medical record since 1999 provides little evidence of any significant change (R. 21). She detailed that the 2002 examination revealed little overt pain behavior, no atrophy, an ability to heel and toe walk without difficulty, ability to get on and off the examination table without difficulty, no muscle weakness or joint effusion, a normal gait and only mild restriction of the cervical trunk and left shoulder muscle (R. 21). Whether under the advice of a doctor not, ALJ Sobrino noted his hitting golf balls in June 2001, his travel and his mowing the grass with a self-propelled lawn mower (R. 20).

Based on these reasons and this record there is no basis for this Court to overturn ALJ Sobrino's credibility determination.

### 2. *ALJ's Hypothetical*

If the Commissioner seeks to rely on VE testimony to carry the burden of proving the existence of a substantial number of jobs that plaintiff can perform, other than his past work, the testimony must be given in response to a hypothetical question that accurately describes plaintiff in all significant, relevant respects. A response to a flawed hypothetical question is not substantial evidence and cannot support a finding that work exists which the plaintiff can perform. See, e.g., *Varley v. Secretary of HHS*, 820 F.2d 777, 779 (6th Cir. 1987) (hypothetical question must accurately portray claimant's "individual physical and mental impairments"); *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987) ("The question must state with precision

the physical and mental impairments of the claimant."); *Myers v. Weinberger*, 514 F.2d 293, 294 (6th Cir. 1975); *Noe v. Weinberger*, 512 F.2d 588, 596 (6th Cir. 1975).

VE Tremblay specifically answered this hypothetical question considering someone with Plaintiff's prior experience of light unskilled jobs, and went on to indicate that there were a number of applicable unskilled, light jobs in Michigan: 2,100 security monitor, 5,000 order clerk, and 1,500 sorter positions that such an individual could perform (R. 368-369). While Plaintiff's counsel notes Dr. Lockhart's September 1999 doubts about Plaintiff's ability to compete in the field of common labor and Dr. Lum's August 1999 opinion that Plaintiff is disabled, these largely unsupported conclusions are not binding on ALJ Sobrino and there is little more current evidence supporting Plaintiff's position. The ALJ adequately addressed all of Plaintiff's limitations in the hypothetical question, and her decision should be upheld.

**IV.    Recommendation**

For the reasons stated above, it is Recommended that Plaintiff's Motion for Summary Judgment be **DENIED** and Defendant's Motion for Summary Judgment be **GRANTED**. The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local, 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Date: January 14, 2008                                         s/Steven D. Pepe
Ann Arbor, Michigan                                          United States Magistrate Judge

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing ***Report and Recommendation***  was served on the attorneys and/or parties of record by electronic means or U.S. Mail on January 14, 2008.

                                          s/ Alissa Greer
                                          Case Manager to Magistrate
                                          Judge Steven D. Pepe
                                          (734) 741-2298